**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

ACV Auctions, Inc.,

        Plaintiff,

    -against-

National Auto Auction Association, Inc.,
Auto Auction Services Corporation,
Manheim Auctions, Inc.,
ADESA US Auction, LLC, ADESA, Inc.,
ServNet Auction Group, and Independent Auto
Auction Services Corporation d/b/a
Independent Auction Group,

        Defendants.

Case No. 1:22-cv-00649

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANTS' MOTION FOR EXTENSION OF TIME</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 1

ARGUMENT ...................................................................................................... 4

I.  Defendants Lack Good Cause to Extend the Current Motion to Dismiss Deadline. .......... 4

    A.  Transfer is not likely in the first place, because Defendants have not met their heavy burden to show transfer. ................................................................. 6

    B.  The requested extension will not conserve judicial resources. ........................... 10

    C.  Defendants will not suffer prejudice by responding to the Complaint while their motion to transfer venue is pending. ................................................... 12

II.  Defendants' Failure to Comply with the Local Rules Supplies an Additional Reason to Deny Their Motion. ........................................................................................... 13

    A.  Defendants' motion fails to comply with Local Rules 7(a)(1) and (a)(3). ........... 14

    B.  Defendants' motion fails to comply with Local Rule 7(d)(1). .......................... 15

CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................12

*Bogan v. Hodgkins*,
166 F.3d 509 (2d Cir. 1999)......................................................................................8

*In re Bystolic Antitrust Litig.*,
No. 20-cv-5735, 2021 WL 148747 (S.D.N.Y. Jan. 15, 2021) ..................................9

*C.I.S. of Pine Bluff, Inc. v. Alltel Cellular Assocs. of Ark. Ltd. P'ship*,
175 B.R. 834 (S.D.N.Y. 1994)..................................................................................6

*Carovski v. Jordan*,
No. 06-CV-716S, 2011 WL 1362624 (W.D.N.Y. Apr. 11, 2011)...........................14

*Carr-Stock v. Orthotic Rehab. Prods., Inc.*,
832 F. Supp. 2d 229 (W.D.N.Y. 2011) .....................................................................7

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*,
865 F.2d 513 (2d Cir. 1989)......................................................................................6

*Fox News Network, LLC v. Time Warner, Inc.*,
No. 96-cv-4963, 1997 WL 271723 (E.D.N.Y. May 16, 1997).................................9

*Hart v. Crab Addison, Inc.*,
No. 13-CV-6458 CJS, 2014 WL 2865899 (W.D.N.Y. June 24, 2014) ............10, 11

*King v. Aramark Servs. Inc.*,
No. 1:19-cv-77, 2019 WL 3428833 (W.D.N.Y. July 30, 2019) ...............6, 7, 10, 11

*Kujawski v. Liberty Mut. Ins. Co.*,
No. 19-CV-603S, 2021 WL 1197734 (W.D.N.Y. Mar. 30, 2021) .........................15

*Moog, Inc. v. Newport Aeronautical, Inc.*,
No. 14-CV-00504A(F), 2016 WL 3444238 (W.D.N.Y. June 23, 2016)................11

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
599 F.3d 102 (2d Cir. 2010)......................................................................................6

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
    472 U.S. 284 (1985)...........................................................................................12

*Rankin v. City of Niagara Falls*,
    293 F.R.D. 375 (W.D.N.Y. 2013), *aff'd* 569 F. App'x 25 (2d Cir. 2014)................4

*Smith v. Pro Football, Inc.*,
    593 F.2d 1173 (D.C. Cir. 1979) ............................................................................8

*Steuben Foods, Inc. v. Nestle USA, Inc.*,
    No. 13-CV-00892(S)(M), 2014 WL 12725370 (W.D.N.Y. Apr. 16, 2014)...........10

*Strickland v. Hegedus*,
    No. 19-CV-6763L, 2022 WL 2306976 (W.D.N.Y. June 27, 2022) .......................12

*Sunshine Cellular v. Vanguard Cellular Sys., Inc.*,
    810 F. Supp. 486 (S.D.N.Y. 1992) ..................................................................9, 10

*Tyler v. Kawaguchi, Inc.*,
    No. 00-CV-6366T, 2005 WL 857069 (W.D.N.Y. Mar. 30, 2005) .........................14

*United States v. Giacobbe*,
    No. 18-cr-00108, 2022 WL 4298251 (W.D.N.Y. Sept. 19, 2022) ........................16

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966).........................................................................................12

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964).........................................................................................13

*Villa v. Sw. Credit Sys., L.P.*,
    2020 WL 3808911 (W.D.N.Y. June 10, 2020), *report and recommendation
    adopted*, 2020 WL 3802936 (W.D.N.Y. July 7, 2020)..........................................4

**Statutes**

28 U.S.C. § 1404(a) .......................................................................... *passim*

Donnelly Act.....................................................................................................12

Fed. R. Civ. P. 4(d)(1)........................................................................................2

Fed. R. Civ. P. 6(b) ............................................................................................4

Fed. R. Civ. P. 6(b)(1).........................................................................................4

Fed. R. Civ. P. 12(a)(1)(A) ..................................................................................2

Fed. R. Civ. P. 12(b)(6)..........................................................................10, 11, 12

Fed. R. Civ. P. 83 ...................................................................................................................14

L. R. Civ. P. 7(a)(1) ..........................................................................................................14, 15

L. R. Civ. P. 7(a)(3) ..........................................................................................................14, 15

L. R. Civ. P. 7(d)(1) ...............................................................................................................15

L. R. Civ. P. 7(d)(1)(A) ..........................................................................................................15

L. R. Civ. P. 7(d)(1)(B) ..........................................................................................................16

**Other Authorities**

*ADESA Buffalo*, ADESA, https://www.adesa.com/event/adesa-buffalo/2022-11-
    08/ (last accessed Nov. 5, 2022) ...............................................................................10

*U.S. Locations*, Manheim, https://publish.manheim.com/en/locations/us-
    locations.html/?cid=LP-BRM-AUCTIONS-MYMH (last accessed Nov. 5,
    2022) ............................................................................................................................10

## INTRODUCTION

Despite the title, Defendants' Motion for Extension of Time to Respond to Plaintiff's Complaint (Dkt. 47), and accompanying request for expedited treatment, is neither a motion to extend nor an exigent circumstance.  It is a thinly veiled request to stay this action pending the Court's ruling on Defendants' recently filed motion to transfer venue based on *convenience*— not improper venue.  Indeed, that transfer motion was filed just in time to create an "urgent" need to seek to extend the response date that Defendants themselves requested, and which was stipulated to by the parties, and entered by this Court.

The instant motion to effectively stay this action indefinitely is substantively deficient because it is premised on a deeply flawed motion to transfer for Defendants' convenience that ignores the import of Plaintiff's choice of its home forum (among many other things).  Worse, it appears to be brought for the purpose of delaying the proceedings.  And it is procedurally deficient in numerous ways.  For these and other reasons explained below, Plaintiff ACV Auctions, Inc. ("ACV") respectfully requests the Court deny the motion.

## BACKGROUND

ACV filed its Complaint in the Western District of New York on August 26, 2022.  Dkt. 1.  On August 30, 2022, Counsel for Defendants National Auto Auction Association, Inc. ("NAAA"), Auto Auction Services Corporation ("AASC"), and ServNet Auction Group reached out to Counsel for ACV and offered to waive service pursuant to Rule 4, and ACV agreed to that process.  Declaration of Eileen M. Cole ("Cole Decl."), ¶¶ 4-5.  Based on the obtained waivers,

NAAA, AASC, and ServNet had to respond to the Complaint by October 31, 2022.  Dkts. 8-10; Fed. R. Civ. P. 4(d)(1).  Thereafter, ACV served the Complaint on all remaining Defendants between September 2 and 20, 2022, triggering response deadlines to answer or otherwise respond on September 23, 2022 for ADESA US Auction, LLC, on September 28, 2022 for ADESA, Inc., on September 27, 2022 for Independent Auto Auction Services Corporation ("IAG"), and on October 11, 2022 for Manheim Auctions, Inc.  Cole Decl. ¶ 6; Dkts. 5-7, 11; Fed. R. Civ. P. 12(a)(1)(A).  At Defendants' requests, ACV agreed to further extend those deadlines.  Initially, ACV agreed to extend IAG and ADESA US Auctions' response to October 31, 2022.  Cole Decl. ¶¶ 7-9.  Then at the request of Manheim's counsel, on behalf of all Defendants, ACV agreed to extend the response deadline for all Defendants to November 11, 2022—the date proposed by Defendants.  Cole Decl. ¶¶ 10-15.

On September 28, 2022, ACV and all Defendants stipulated to a consolidated briefing schedule.  Cole Decl. ¶¶ 14-15; Dkt. 14.  The schedule set the deadline for Defendants to respond to the Complaint for November 11, 2022—*a date Defendants chose*.  Cole Decl. ¶¶ 10, 15.[1] Defendants did not at any time object to or otherwise raise the issue of venue with ACV during the parties' iterative negotiations regarding the consolidated briefing schedule.  Cole Decl. ¶ 16. This Court entered that schedule on October 31, 2022.  Dkt. 46.

---

[1] The Defendants also agreed to consolidated joint briefing of common issues, reserving the right to separately brief individual issues, and to meet and confer regarding page limits.  Dkt. 14. ACV also notes that November 11, 2022 is Veterans Day, a federal holiday, which will make Defendants' responses due on Monday November 14, 2022.

On October 20, 2022—over three weeks after submitting the agreed upon briefing schedule to the Court—Defendants asked ACV to "pause" the litigation and extend the agreed-upon response date chosen by the Defendants for an additional 60 days.  Cole Decl. ¶ 17.  The purported basis for the extension request was because some Defendants were considering motions on personal jurisdiction and venue.  *Id.*  Given that ACV previously agreed to extend and adopt Defendants' chosen response date, ACV declined to agree to an additional two-month extension on October 27, 2022.  Cole Decl. ¶ 18.  The next day, on October 28, 2022, Defendants filed a joint motion to transfer venue to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).  Cole Decl. ¶ 19; Dkt. 43.  The motion does not contend that venue is improper here in the Western District of New York where Plaintiff ACV is headquartered.  *See* Dkt. 44.  Nor did Defendants seek expedited treatment of their motion to transfer or seek a stay of proceedings pending resolution of that motion as part of the filing.  *See* Dkts. 43-44.

The next day, Defendants offered to negotiate a longer schedule for the motion to transfer briefing if ACV would agree to stay Defendants' motion to dismiss deadline until 28 days after the decision on their transfer motion.  Cole Decl. ¶ 20.  ACV declined.  Cole Decl. ¶ 21.  Three days later, on November 1, 2022, Defendants filed the present motion, which effectively asks the Court to indefinitely stay the case proceedings pending resolution of their motion to transfer venue for convenience.  Dkt. 47.  The motion was submitted ***without*** an accompanying notice of motion, supporting declaration, or a separate motion to seek expedited briefing—as required by the Local Rules.  *Id.*

-3-

**ARGUMENT**

All of Defendants have had the Complaint since September, and they could have moved

to transfer for convenience pursuant to 28 U.S.C. § 1404(a) at any time since then.  Instead,

Defendants moved to transfer venue ***exactly*** two weeks before the stipulated November 11

motion to dismiss deadline after ACV did not agree to a further sixty-day extension (on top of

the previously agreed upon extension requests).  And when ACV refused to stay the deadline

indefinitely until after Defendants' motion to transfer for convenience was determined,

Defendants filed the present motion on an expedited basis.

This supposed urgency is entirely of Defendants' own creation.  Defendants chose the

stipulated date for them to respond to the Complaint, and should not now be allowed to

indefinitely defer responding to ACV's claims.  Defendants' efforts to delay this case with an

opportunistically-timed transfer request prejudices ACV, and should be denied.

**I.     Defendants Lack Good Cause To Extend The Current Motion To Dismiss Deadline.**

Defendants' motion fails to provide the Court with grounds to extend the November 11

motion to dismiss deadline.  Fed. R. Civ. P. 6(b) authorizes an extension of time in which to file

only "for good cause."  Fed. R. Civ. P. 6(b)(1).  While good cause under Rule 6(b)(1) "is usually

not difficult to show," *Rankin v. City of Niagara Falls*, 293 F.R.D. 375, 390 (W.D.N.Y. 2013),

*aff'd* 569 F. App'x 25 (2d Cir. 2014), Defendants here fail to meet even that "light burden," *Villa*

*v. Sw. Credit Sys., L.P.*, No. 19-CV-1701, 2020 WL 3808911, at *4 (W.D.N.Y. June 10, 2020)

(citation omitted), *report and recommendation adopted*, 2020 WL 3802936 (W.D.N.Y. July 7, 2020).

Defendants summarily contend that an extension will help conserve the Court's and the parties' resources by "avoid[ing] the need … to re-brief the motion to dismiss to address Eleventh Circuit law" ***in the event*** this Court grants Defendants' pending motion to transfer. Dkt. 47 at 2.  But that argument presupposes that there is, in fact, a valid basis to transfer—which there is not.  The mere possibility that Defendants ***might need*** to revise their motions to dismiss to add Eleventh Circuit law ***if*** the Court should grant their motion to transfer does not justify the Defendants' eleventh-hour request for an indeterminate stay (***not*** a "brief extension" of a deadline, Dkt. 47 at 2).

Defendants fail to show the requisite cause to grant the motion to extend because it is not likely that the transfer motion will be granted in the first place, and thus Defendants asserted "re-briefing" justification evaporates.  Nor would Defendants' requested relief conserve judicial resources because courts in the Second Circuit routinely decide motions to transfer and motions to dismiss at the same time.  Finally, Defendants have had almost two months to draft their motions to dismiss, and could have moved to transfer earlier and sought expedited review of that motion if they wanted it decided before briefing the motion to dismiss.

**A.  Transfer is not likely in the first place, because Defendants have not met their heavy burden to show transfer.**

As explained above, Defendants' motion to effectively stay the Defendants' chosen and stipulated to Complaint response date indefinitely is premised on their last-minute motion to transfer for convenience.  Although ACV will address those arguments in full on November 14, 2022, even a cursory review of that motion shows that Defendants have not remotely satisfied their heavy "burden of making out a strong case for transfer."  *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).

ACV, the Plaintiff in this antitrust action, is headquartered in Buffalo, Dkt. 1 ¶ 19, making the Western District of New York its place of residence.  ACV's choice of home forum deserves considerable deference here, for two independent reasons.  First, a plaintiff's "choice of forum is "accorded great weight," and that is "particularly so when the plaintiff resides in the judicial district where the suit was filed."  *King v. Aramark Servs. Inc.*, No. 1:19-cv-77, 2019 WL 3428833, at *4 (W.D.N.Y. July 30, 2019) (citations omitted).  Second, a defendant bears an "especially heavy" burden to justify a transfer "in antitrust suits, where plaintiff's choice of forum is entitled to particular respect."  *C.I.S. of Pine Bluff, Inc. v. Alltel Cellular Assocs. of Ark. Ltd. P'ship*, 175 B.R. 834, 837 (S.D.N.Y. 1994) (citation omitted).

Defendants' motion to transfer contains no recognition of either of these reasons ACV's choice of forum deserves particular deference here.  *See generally* Dkt. 44, Section II.B.  Instead,

that motion contends that a "plaintiff's choice of forum receives less consideration where, as here, 'the operative facts have few meaningful connections to the plaintiff's chosen forum.'" Dkt. 44 at 15 (citation omitted).  Defendants are wrong, twice over.

*First*, the "locus of operative facts" argument is misguided.  Even where "the operative facts have little or no connection with the forum chosen by the plaintiff"—which is not the case here—deference to the plaintiff's chosen forum is still not "significantly diminished" unless the "plaintiff's residence is *not* the chosen forum."  *King*, 2019 WL 4528833, at *4 (emphasis added) (citations omitted); *see also id.* at *12, *14 (declining to transfer even where "the main set of operative facts [are] located in WDVa" in part out of "the deference owed to [the plaintiff's] choice of forum" in their home district).  Indeed, one of the very cases Defendants cite for this argument makes this point directly (Dkt. 44 at 15), explaining that even though "the locus of operative facts" were outside of the plaintiff's chosen district, the fact that the "[p]laintiff has brought suit in his home district" meant that the plaintiff's choice of forum still weighed against transfer.  *See Carr-Stock v. Orthotic Rehab. Prods., Inc.*, 832 F. Supp. 2d 229, 242 (W.D.N.Y. 2011).

*Second*, and more fundamentally, Defendants' theory for why the Northern District of Georgia—and not the Western District of New York—is at the center of the "operative facts" in this case ignores the core allegations in the complaint and black letter group boycott law. Defendants' theory is that ACV's "Section 1 antitrust claims revolve around AASC's decision in July 2019 to deny ACV an AutoIMS license."  Dkt. 44 at 13.  But the Complaint does not allege

that *AASC*'s decision to deny AutoIMS access was the central event at the heart of the conspiracy claim.  Instead, that event is merely one of many acts taken in furtherance of the longstanding and preexisting group boycott by which "Manheim, ADESA, ServNet, and IAG … have conspired to … improperly exclude" ACV from "competition for Commercial Consignors' used car auctions." Dkt. 1 ¶¶ 48, 56-57, 68-69.  The denial of the license is a manifestation of the unlawful conspiracy.

Indeed, ACV has alleged the "classic model of a group boycott," in which a "group of competitors at one level"—Manheim, ADESA, ServNET, and IAG—engage in a "concerted attempt … to protect themselves … from non-group members," like ACV, "who seek to compete at that level." *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) (quoting *Smith v. Pro Football, Inc.*, 593 F.2d 1173, 1178 (D.C. Cir. 1979); Dkt. 1 ¶¶ 68-69.  As is common with group boycotts, the "boycotting group" of Defendants achieved that end by "depriv[ing] [a] would-be competitor[]" of access to the "trade relationship[s] … need[ed] in order to enter … the level wherein the group operates," *Smith*, 593 F.2d at 1178, which they accomplished by conspiring with AASC and NAAA to ensure ACV could not access AutoIMS.  Dkt. 1 ¶¶ 56-57, 68-69.

The fact that AASC is the ultimate supplier of something needed for ACV to compete does not mean that the "Section 1 antitrust claims *revolve* around AASC[,]"  Dkt. 44 at 13 (emphasis added), as opposed to the Defendants, including the competitor Defendants, that orchestrated the boycott for their benefit.  Indeed, the key locations will be where (1) "the

defendants allegedly conspired to prevent [ACV] from entering [the] market[]," *Fox News Network, LLC v. Time Warner, Inc.*, No. 96-cv-4963, 1997 WL 271723, at *3 (E.D.N.Y. May 16, 1997), and (2) where Defendants are doing business with "potential customers" that ACV is "precluded … from reaching" as a result of Defendants' "refusal to deal and denial of an essential facility," *Sunshine Cellular v. Vanguard Cellular Sys., Inc.*, 810 F. Supp. 486, 501 n.11 (S.D.N.Y. 1992); *In re Bystolic Antitrust Litig.*, No. 20-cv-5735, 2021 WL 148747, at *5 (S.D.N.Y. Jan. 15, 2021) (the "locus of operative facts" turns on "[t]he intent, effect, and consequences" of the "agreement[]").

As to the location where Defendants "conspired," the Complaint allegations and the Defendants' papers point to many locations other than simply the Northern District of Georgia. Three of the four **competitor** Defendants are located in Arizona, Indiana, Tennessee, and Maryland, Dkt. 1 ¶¶ 20-25; *accord* Dkt. 44 at 8, and Defendant NAAA is located in Colorado, Dkt. 1 ¶ 26. Defendants' own declaration (from AASC's CEO) shows that the majority of AASC's Board lives outside of the Northern District of Georgia. Dkt. 44-1, Krishnamoorthy Decl. ¶ 13. That same declaration shows that pre-pandemic their live meetings regularly would occur at industry conferences in Las Vegas, Nevada, Indianapolis, Indiana, or in New Orleans, Louisiana. *Id.* ¶¶ 15-16.

The effects of the anticompetitive agreement likewise will be found outside of the Northern District of Georgia. Importantly, Defendants' motion to transfer fails to mention that part of Manheim and ADESA's Auction Services business is located in the Western District of

New York, with physical auctions in Buffalo and Rochester.[2]  That omission is meaningful

because the presence of "potential customers" supplies a "strong enough connection to this

district to warrant deference to [ACV's] choice."  *Sunshine*, 810 F. Supp. at 501 n.11.

In short, Defendants' motion to transfer is fundamentally flawed.  That alone warrants

denial of this motion, because Defendants' purported need to re-brief is the rationale underlying

their requested stay of their chosen motion to dismiss deadline and this is unlikely to be required.

### B.      The requested extension will not conserve judicial resources.

Although Defendants emphasize the need to conserve judicial resources, this Court can

avoid spending resources adjudicating a motion to dismiss without granting an extension.

District courts, including courts in this District, routinely "are presented with both a motion to

dismiss, under Fed. R. Civ. P. 12(b)(6), and a motion to transfer venue, under 28 U.S.C.

§ 1404(a)" at or around the same time.  *Hart v. Crab Addison, Inc.*, No. 13-CV-6458 CJS, 2014

WL 2865899, at *2 (W.D.N.Y. June 24, 2014) (considering 12(b)(6) motion to dismiss or, in the

alternative, to transfer venue to the Southern District of Texas); *see also King v. Aramark Servs.,

Inc.*, No. 1:19-cv-77, 2019 WL 3428833 (W.D.N.Y. July 30, 2019); *Steuben Foods, Inc. v.

Nestle USA, Inc.*, No. 13-CV-00892(S)(M), 2014 WL 12725370 (W.D.N.Y. Apr. 16, 2014);

---

[2] *See U.S. Locations*, Manheim, https://publish.manheim.com/en/locations/us-
locations.html/?cid=LP-BRM-AUCTIONS-MYMH (last accessed Nov. 5, 2022); *ADESA
Buffalo*, ADESA, https://www.adesa.com/event/adesa-buffalo/2022-11-08/ (last accessed Nov. 5,
2022).

*Moog, Inc. v. Newport Aeronautical, Inc.*, No. 14-CV-00504A(F), 2016 WL 3444238 (W.D.N.Y. June 23, 2016).

In such circumstances, courts "commonly address the venue motion first, and, where transfer is appropriate, leave the motion to dismiss to be decided by the transferee court." *Hart*, 2014 WL 2865899, at *2; *accord Moog Inc.*, 2016 WL 3444238, at *7 (granting defendant's motion to transfer venue to the Central District of California pursuant to § 1404(a) and "defer[ing]" ruling on Rule 12(b)(6) motion to dismiss). And if, as likely here, transfer is not appropriate, courts will also address the motion to dismiss. *E.g.*, *Hart*, 2014 WL 2865899, at *14 (granting in part and denying in part defendant's motion to dismiss after first determining defendant failed to show request to Southern District of Texas should be granted); *King v. Aramark Servs., Inc.*, No. 1:19-CV-77, 2019 WL 3428833, at *14, *23 (July 30, 2019) (granting in part and denying in part defendant's motion for partial dismissal after first determining defendant failed to show request to transfer to Western District of Virginia should be granted).

Accordingly, extending (i.e., staying) the deadline for Defendants to respond to the Complaint will not in any way conserve judicial resources. Instead, it would have the opposite effect of preventing the Court from disposing of Defendants' motion to transfer and addressing Defendants' motion to dismiss in a single decision.

**C.      Defendants will not suffer prejudice by responding to the Complaint while their motion to transfer venue is pending.**

Defendants' claim that they will need to "re-brief" the motion to dismiss if this case is transferred to the Northern District of Georgia.  Again, this argument presumes Defendants' motion to transfer for convenience will succeed.  Not only is that assumption flawed, Defendants' argument overstates the amount of work required *if* their motion to transfer succeeds.

ACV alleges Defendants violated federal antitrust law by engaging in an unlawful group boycott, conspiring to restrain trade, monopolizing the market for Standardized Vehicle Inventory Management Systems, and conspiring to monopolize those systems.  Dkt. 1 ¶¶ 137–89.  The elements of those federal causes of action are governed by seminal Supreme Court decisions.  *E.g.*, *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284 (1985) (group boycott); *United States v. Grinnell Corp.*, 384 U.S. 563 (1966) (monopolization).  Similarly, key Supreme Court cases dictate the legal standard a court must apply when evaluating a Rule 12(b)(6) motion.  *E.g.*, *Ashcroft v. Iqbal*,556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Plaintiff is not aware of, nor do Defendants identify, any concrete way in which the Second and Eleventh Circuits diverge materially on the points of law relevant to this case.

Further, New York law applies to ACV's additional Donnelly Act claim whether this case remains in this Court or is transferred to the Northern District of Georgia.  *Strickland v.*

*Hegedus*, No. 19-CV-6763L, 2022 WL 2306976, at \*2 (W.D.N.Y. June 27, 2022); *accord Van*

*Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("A change of venue under § 1404(a) generally

should be, with respect to state law, but a change of courtrooms."). Thus, the bulk of

Defendants' arguments in support of dismissal of ACV's claims will be the same regardless of

how the Court rules on Defendants' transfer request.

To the extent Defendants mean only to emphasize that they would need to change their

citations from Second Circuit case law to Eleventh Circuit case law in the event of a transfer, that

shows only that the resources conserved would be minimal.[3]  Further, in the unlikely event this

case is transferred from Plaintiff's home forum to the Northern District of Georgia, Defendants

could ask that court for the limited additional time they would need to conform their motions to

dismiss to the relevant Eleventh Circuit case law.  But that does not justify them holding off on

filing their motions, let alone securing the right to stay their deadline to file them until 28 days

after the transfer motion is resolved.

**II.   Defendants' Failure To Comply With The Local Rules Supplies An Additional Reason To Deny Their Motion.**

Beyond their substantive failures, Defendants' noncompliance with this forum's Local

Rules provides an additional and independent reason to deny their request for an extension.  A

---

[3] Unless Defendants made the decision to stop working on their respective motions to dismiss after deciding to submit a motion to transfer the case, they likely have already expended most of the resources required to brief the motion and should be well-positioned to meet the November 11 deadline that they originally requested.

district court's local rules "are law," *Carovski v. Jordan*, No. 06-CV-716S, 2011 WL 1362624, at

*3 (W.D.N.Y. Apr. 11, 2011), "not 'precatory meanderings to be adhered to or not as the parties

so choose,'" *id.* (citation omitted); *see also* Fed. R. Civ. P. 83.  The Western District of New

York's Local Rules "provide clear notice of the risks to non-compliant parties" (*e.g.*, L. R. Civ.

P. 7(a)(1), (3)), such that the Court comfortably can "assume[]" defense counsel is "familiar

with" the Local Rules and the consequences for disregarding them.  *Carovski*, 2011 WL

1362624, at *3-4 (denying defendants' summary judgment motion for failure to comply with

Local Rules); *Tyler v. Kawaguchi, Inc.*, No. 00-CV-6366T, 2005 WL 857069, at *1 (W.D.N.Y.

Mar. 30, 2005) ("Nor can the court overlook defendants' non-compliance, as the defendants'

failure to comply is more than *de minimus*." (emphasis added)).  Defendants' motion—a two-

page submission requesting both an extension of time to file their response to the Complaint and

expedited consideration of that request—fails to comply with several of this District's Local

Rules.

### A.  Defendants' motion fails to comply with Local Rules 7(a)(1) and (a)(3).

First, Defendants' motion fails to comply with Local Rule 7(a)(1), which requires moving

parties to file a notice of motion "for *all* motions."  L. R. Civ. P. 7(a)(1) (emphasis added).

Among other things, a notice of motion is required to expressly identify the legal grounds for the

request being made.  *Id.*  Defendants' motion also fails to comply with Local Rule 7(a)(3), which

requires that motions of the kind Defendants bring here "be supported by at least one (1)

affidavit, declaration or affirmation, and by such other evidence … as appropriate to resolve the

particular motion." L. R. Civ. P. 7(a)(3).  Both rules include explicit notice that a party's

noncompliance may result in denial of the motion.  L. R. Civ. P. 7(a)(1); L. R. Civ. P. 7(a)(3).[4]

Here, Defendants have not submitted either the requisite notice or supporting evidence.

And what Defendants did file—a two-page "motion" that fails to cite to any rule or legal

authority for their extension request, or otherwise contain all information required by a notice—

does not remedy this failure.  *See Kujawski v. Liberty Mut. Ins. Co.*, No. 19-CV-603S, 2021 WL

1197734, at *5 (W.D.N.Y. Mar. 30, 2021) (striking motion for failure to file notice of motion,

and finding plaintiff was prejudiced by defendants' failure to file a notice of motion).  These

failures alone warrant denying their motion.

### B.     Defendants' motion fails to comply with Local Rule 7(d)(1).

Defendants' motion also fails to comply with the Local Rules' special requirement for

when a party makes a request to expedite briefing on a motion.  In such circumstances, like here,

Rule 7(d) (1) requires the party to "make ***a separate*** motion for an expedited hearing, setting

forth the reasons why an expedited hearing is required" that is "accompanied by":  (a) "the

motion the party is seeking to have heard on an expedited basis, together with supporting

affidavits and memorandum of law," L. R. Civ. P. 7(d)(1)(A) (emphasis added); and (b) "a

proposed order granting an expedited hearing, with dates for serving the motion, filing

---

[4] Local Rule 7(a)(1) explicitly states that a party's noncompliance "may be grounds for denial or for striking of the motion, without prejudice."  L. R. Civ. P. 7(a)(1).  Local Rule 7(a)(3) includes a similarly explicit notice: "Failure to comply with this requirement may constitute grounds for resolving the motion against the non-complying party."  L. R. Civ. P. 7(a)(3).

responsive papers, and for a hearing left blank to be filled in by the Court," L. R. Civ. P. 7(d)(1)(B).

Defendants did not submit a separate motion for an expedited hearing or a proposed order.  Consequently, their request for expedited consideration should be denied.  *United States v. Giacobbe*, No. 18-cr-00108, 2022 WL 4298251, at *3 (W.D.N.Y. Sept. 19, 2022) (need for "prompt consideration" of a motion does not "translate[ ] to a free pass to disregard a court's clear and properly adopted local rules" requiring a special motion).

## CONCLUSION

Defendants' purported need for what is effectively an indefinite stay of the stipulated motion to dismiss briefing schedule is a problem entirely of their own making.  The motion also is fundamentally flawed both substantively and procedurally.  For the above reasons, Plaintiff respectfully requests the Court deny Defendants' Motion for Extension of Time to Respond to Plaintiff's Complaint (Dkt. 47) in its entirety or, in the alternative, require Defendants to respond to Plaintiff's Complaint no later than November 18, 2022.

Dated: November 5, 2022

Respectfully submitted,

Clark Hill PLC

/s/ Myriah V. Jaworski
Myriah Jaworski
1 Seneca Street, Suite 29
Buffalo, NY 14210
716-725-2609
mjaworski@clarkhill.com

ORRICK, HERRINGTON & SUTCLIFFE

/s/ John (Jay) Jurata, Jr.
John (Jay) Jurata, Jr. (pro hac vice forthcoming)
Eileen M. Cole (pro hac vice forthcoming)
Benjamin Chagnon (pro hac vice forthcoming)
Christie Boyden (pro hac vice forthcoming)
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
202-339-8400
jjurata@orrick.com
eileen.cole@orrick.com
bchagnon@orrick.com
cboyden@orrick.com

*Counsel for Plaintiff*
*ACV Auctions, Inc.*